Good morning, your honors. Charles Nickel appearing for the petitioners. One of the main issues in this case is whether the lead petitioner, Mr. Choy-Alvarez, whether his activities in Peru amounted to material support for a terrorist organization which would subject him to bars to his applications for asylum and restriction on removal. And also, what does the word material mean in the context of those bars to relief? Are there any levels of collaboration with a terrorist which might not be regarded as material? Is that your de minimis exception? Yes, and, you know, I cited the Third Circuit case as a dissenting opinion where the judge questioned, is giving a glass of water to a terrorist, is that material? The, the, the We don't have giving a glass of water, though. No, not in this case. However, oh, and the Court does have jurisdiction to review this issue, both as to the because the, well, you have the definition of terrorist organization. Well, just a minute. Just a minute. I think we have jurisdiction as it relates to determining on the adverse credibility determination as it relates to withholding. Yes. And I think we have the same as it relates to convention and terror. But I guess my worry was nobody, it didn't seem like you ever challenged the credibility determination. All you ever did in the lower, if you will, adjudication was argue that the testimony is consistent with a low level of involvement. Well, he was involved with a Catholic. I mean, if you're not challenging the credibility determination, then there's no question that I cannot suggest that he was credible in trying to attack, if you will, that he supported the terrorist organization. I don't think he supported the terrorist organization. I support he supported the Catholic Church. Well, but it seems to me you've got to determine if there was a wrong adverse credibility determination, which I couldn't find. Well, he never admitted to having given false testimony. Does he have to confess? Basically, it was not a, he clearly stated, I mean, the facts really in terms of the only evidence in this case. If we have to evaluate it, and that's what I'm trying to do, it seems to me that I can find that there was some adverse credibility determinations that certainly substantial evidence supports. So, I mean, I can argue, I can find that you might make an argument about it, but there are two or three times when there were adverse credibility determinations made that has substantial evidence to support them. So at that point, if I don't have credibility determination on your client's side, then I have to go to the material support issue, really. Is it material support? Now you now say it's a de minimis activity. Well, he did challenge the credibility below. He said that he had given credible, consistent testimony throughout and that the board's adverse credibility determination was not correct. The actual facts are really not, as far as what he did, are not in question. Okay. What he did was he- He passed out pamphlets that were in favor of the Shining Path. No, in favor of his own organization. He passed out- In 1980, at the age of 19, he joined a Catholic youth organization, and he was a university student. He was a leftist. He didn't support the-he felt that there was great financial inequity in the country, that the natural resources were not being used to the benefit of the Peruvian people. And he stayed with that organization, which provided social services. He taught classes. He was a math tutor for more than 10 years. Now, he did nothing that was not consistent with- There were other leftist students also in this. Part of what they did was they had political discussions. And, you know, everything-painting the slogans and passing out the pamphlets were part of his activities. Well, it doesn't matter whether it was also part of something else. I mean, if the Boy Scouts go out and paint slogans in favor of ISIS, that's still in favor of ISIS. It has nothing to do with, you know, being in the Boy Scouts doesn't protect you. So I guess I don't understand the point of saying that it was consistent with his other activities. There was no mention of Sendero Luminoso in anything that he did, neither on the pamphlets nor what he painted. Like most-the vast majority of Peruvians, he strongly disapproved his administration of Elan Garcia. But there's-isn't there evidence in the record that does two things. One, suggest or show that he was aware that this one individual whose associations he credits or blames for bringing him into these activities. I mean, the activity-the pamphleting and the spray-painting was done at the behest of an individual. And that individual, he knew, was spouting even more leftist sentiments than he adopted for himself and had tried to take over his classes. And he knew that they were-people like this guy were trying to take over the organization that you've referred to. And he was aware of this, and there's conflicting evidence of when he became aware of it, but he knew that this was something different from his own approach of the past ten years. Yes. He-Mazoni was more strident, more militant. But Mazoni joined that-his organization. He didn't join Sendero Luminoso. Does that matter? But, you know, he came into a Catholic church where everyone was welcome. Mazoni can state his positions. He thought that he was more radical, but so what? There's no crime in being radical. And what he painted did nothing regarding Sendero Luminoso. Most people agreed with what he wrote. But didn't the- Helen Garcia lost in a landslide to Alberto Fujimori. And if Alberto Fujimori ever gets out of prison, maybe he'll run for president again. He said boycott this election because he said there's no one to vote for. May I ask one other question, though? Yes. What do you-what are we to make of the evidence in the record that Mr. Troy Alvarez knew that did he-if he were not to flee, the next step for him would be training and becoming an armed soldier? Right. He testified that he did-I mean, he always- A guerrilla soldier. He always knew, and he didn't. He rejected that. He knew that Mazzoni was more extreme. And when he was handing out pamphlets, he was doing it as part of his church organization. Now, that is when he said that Mazzoni told him definitely, hey, I'm with the Shining Path. But he's already- But there's some conflicting evidence about that. He's already handing out pamphlets for-he would do that anyway. At Mazzoni's request? I think there is a convergence of their positions. And I think that's okay. You know, he supported this-Mazzoni supported some of the positions of the organization. It's conceivable that there would be a politician in the United States who gets an unsolicited and perhaps embarrassing endorsement from an organization which would be widely considered to be either an extremist or perhaps a hate organization. And it's not to say that politician is a member of that organization or funds it or gave an ask for this. No, but if he starts handing out pamphlets for them, it's a whole different matter. Well, he's handing out pamphlets anyway. He wants to boycott the election. You know, he can be a convergence. They can be in agreement up to a certain point, but then they split. I mean, he's not condoning violence. He never, in fact, he didn't let the Mazzoni talk to his students in class. Let me move to another issue, the material support issue. You now say that what your client did was de minimis activity. Where do you make that argument to the BIA? Well, we're saying it didn't amount to. Just a minute. Where do you make the argument to the BIA? If not made to the BIA, must I remand so they can address it? Because they don't address it. Well, we did mention that there are about 30. Did you address it? I mean, they didn't address it in their decision. And so when I look at this de minimis activity argument, I went right to the BIA to say, what did the BIA say about it? BIA didn't say anything about it. So then I say to myself, don't I need to remand to the BIA to let them address that activity? You could, but they always argue that it didn't reach the level that would be required for material support. Let me go one further. You don't disagree that communications are activities that can give material support, right, under the statute? Yes. You agree with that? Right. What would limit the communication activities one could engage in? What would limit it? When communications are activities that are in material support, what limits the communication activities? Because what you're suggesting is, I agree communications are something that's material support, but I don't think what my client did was enough. So what do you have that limits that? What case should I look at? What standard should I look at? What law? What statute? Well, I would look at the statute outlining the list, what material support it's supposed to be. And there's over 30 items. We've already gone through that, Counselor. You agree that that list contains communications. They are activities that are material in support. Right. And now you say the ones my client did are not, even though communications is dead set in the statute. So then I said, where is he getting his authority for the fact that he can take these communications and move them off the site? I didn't find any. The declaration file supports the fact he did engage in communications. If he had said good morning, I don't think that's a communication which would trigger the bar. If he had painted on the side of that wall, I support Sendero Luminoso. Counselor, I understand your good argument. I want some authority. Give me some authority so that I can take that communications and I can lay it down, not all communications, only this type of communications, only this level of communications. I couldn't find that authority. And then when I looked at the declaration, there is no question he painted signs. There's no question he distributed pamphlets. Those seem to be dead set in the middle of communication, which is material support. But he has to be knowingly giving material support to a terrorist organization. And what he was supporting was his Catholic youth group. Well, that's a different question. Which Mazzoni joined. And he says in his record that he participated just like any other member. He was welcome in there as long as he was going to go by their rules, work for their organization. But they're trying to flip it into these. I think we're conflating two separate questions. If I understand Judge Smith's question, it's what's the authority for saying that the nature of the activities he was engaged in were outside the statutory coverage because they weren't material, number one, even though they were communications. Number two, and that's the question you've moved to, what did he know about the purpose or the intended effect of the communications when he agreed to do them? And I think there's two separate questions. One goes to his knowledge and the other goes to what he was doing. As for the painting of the signs, which he also did with another member of the Catholic group, those were prior to Mazzoni stating that he was Sendero Luminoso. But there's some conflicting evidence in the record on that, isn't there? He says that he, yeah, he chose the word, unfortunately, collaborate. But at a minimum, counselor, he said he was told he was a member of the Shining Path when he received the pamphlets and he went ahead and gave them out anyway. So that's, he even, so even under his own testimony, he engages in that activity. But he was engaged in that activity. I mean, that was not outside of what he would have done with that youth group anyway. And as far as Mazzoni, he says he was Sendero, he had nothing more to do with them. You know, get out of here, but we're going to do what I'm going to do anyway. I'm here, it's like I'm riding on the bus, I'm going this direction. A bad character gets on the bus, I'm staying on the bus. I'm not getting off the bus. I'm already doing what I'm doing. Sotomayor, that wasn't even his testimony. He said he continued to give out the pamphlets because he was scared of Mazzoni, not because he would have done it anyway. Well, he was scared of Mazzoni, but he was also opposed to the election. And, you know, it was sort of like he wanted, he felt that there were two candidates who were unacceptable. You know, this was in 1990, about the same time in Louisiana we had an election between a former Klu Klux Klan leader and a person who was convicted of criminal things, and I believe it was George H. Bush said, well, it's a terrible choice, but vote for the crook, the least resounding endorsement ever. But here the person is saying just boycott the election because these are bad, not because of Sendero or anything else. Can I ask you one question as it relates to Sebastian? Yes. Because we haven't talked about Sebastian. As I understand with Sebastian, she was credible, but there was no past persecution. So all of her application stands on future persecution. It does. And as I understand it, the three threats that you're talking about are about the future persecution. If those aren't enough under our case law to suggest there is future persecution, then you lose? Well, she would be going back, yeah, but she would be going back associated with someone who they're saying is associated with a terrorist organization. All I'm trying to do is, I'm trying to put this again in perspective to what the law is. When I look at Sebastian, it seems to me that reading everything about what she says is the threat of future persecution, everything that she has in there, if I read it all, I don't think that it would compel to those cases where I have found future persecution. And, in fact, in those cases where I haven't found future persecution, they're well within those cases, those, if you will, those three circumstances. So I'm having a tough time with that. Given that she reasonably believes she was being looked after for by Sendero Luminoso, which is a terrorist organization, and that the government, the Mazoni was killed, two other members of the church group were killed, the girlfriend, his home was ransacked. Obviously, there was a strong interest in going after the members of the church group. So... Thank you. Is that your answer? Thank you, counsel. You've exceeded your time, but we'll give you a minute for rebuttal. Go ahead. May it please the court. My name is Paul Stone. I represent the respondent, Attorney General of the United States. The critical issue in this case is Mr. Choi's credibility. Ultimately, that's the core issue and the only issue the court really needs to consider because if he's not credible, he can't prove eligibility for asylum, withholding of removal, or even cat protection, and he certainly can't prove that the material support bar does not apply to him. In this case, his testimony was inconsistent about his role in the Shining Path. When he knew that he was involved in the Shining Path, he initially said that he didn't know he knew Mr. Mazzoni was in the Shining Path, at least as early as when he passed out pamphlets. He also said that he suspected he was a member of Shining Path before that, but then he later said that he didn't find out he was in the Shining Path until three days before he left. There's a number of other inconsistencies in his testimony, but what it adds up to is that he can't carry his burden to show that the material support bar doesn't apply to him. Briefly, on the material support bar, there's two primary questions. One, he raises was the support that he provided to the Sindaro-Luminosa material, and two, whether he showed the exception for knowing that he was assisting a terrorist organization applied. And that also illustrates why his credibility is so important, is because he says he didn't know. And if that's not believable, then no. Right. Exactly, Your Honor. He said he didn't know, and he said he didn't know. Does it matter if it is not believable, but what he was doing was so slight in the effect that it could have that it wasn't material? Which I gather is at least one way of stating the argument, perhaps not the only way. Your Honor, it wouldn't because he ultimately has the burden to prove that the bar doesn't apply. And because he has that burden, if he can't provide credible testimony, then he can't prove that it was, in fact, minor. We don't know for sure what he actually did. You know, if you look back to his asylum interview, he said he was much more involved than he ever testified to. The immigration judge and the board didn't rely on that because the asylum officer didn't testify. But that's the implication of an adverse credibility finding, is we just don't know. And that's the problem we run into. Well, but if we have an adverse credibility finding, it seems to me then we give no credibility to why certain facts happen. But in this particular instance, there's no question that painting on painting happened, and there's no question that handing out pamphlets happened. Is that enough to meet communication? I think it is, Your Honor. Again, the court doesn't have to reach that because of the credibility issue, but it absolutely does. Well, but the credibility issue would not affect that determination. For example, to go back to the glass of water, if he were not credible but the only evidence is that he handed somebody a glass of water, we'd have to make a legal determination whether that constitutes material support, regardless of credibility, wouldn't we? I think, Your Honor, that goes back to an earlier step in the analysis, which I didn't talk to because it wasn't raised in the opening brief, so it was waived. But that is whether the regulation, although the alien always has the burden to show eligibility for asylum, et cetera, which includes showing that bars don't apply because there are all these bars, they aren't required to make that showing in every case. So there's a regulation the Attorney General put out that says if the evidence indicates a bar may apply, the alien has the burden to show by preponderance the evidence that it does not. So the question would then be whether there's evidence in the record indicating the bar may apply. And as I said, that wasn't raised in the opening brief and has never been in dispute that there is some evidence of that. And it's a low threshold, meaning it doesn't have to show that it absolutely does apply, otherwise it would shift the burden back to the government, which is not the intent of the regulation. So there's evidence here that he knowingly assisted Sendero Luminoso, the Shining Path, that he did things at their behest, in particular communication, passing out these pamphlets. Whether or not that actually rises to the level of material support is not an issue at that initial stage. That becomes then the issue when the alien has the burden to prove that it does not. Is your argument that in response to Judge Smith's good question about whether we need to remand to the BIA to get a ruling, their ruling, on was this material support issue, is your response that because the credibility finding was adverse and there's no evidence to compel a contrary conclusion, we need not remand? That's correct, Your Honor. Well, also, it sounds like you're arguing that the conclusion that he failed to carry his burden of proof is not a finding that requires a remand because they've already determined that. That's correct. He didn't carry his burden of proof. That's correct, Your Honor. I'd like to say just briefly about Ms. Sebastian's case, that the issue here is there's two requirements for obtaining asylum. One is having a subjective fear of future persecution, and the other is having a reasonable fear of future persecution. The immigration judge here found that she had established the subjective. She subjectively is afraid of returning, but an objective person in her position where they've had three encounters with people she doesn't know who they are, who haven't actually threatened to harm her or hurt her, just want to know where her husband is, would not give rise to an objectively reasonable fear of future persecution. I think our briefs largely sum up the rest of our arguments. I'm happy to answer any more questions. Otherwise, I would just sum up. In the end, this case really comes down to credibility. Mr. Choi's testimony is inconsistent and weighs material to his asylum application, and he hasn't identified evidence that would compel a contrary conclusion. So the Court need not go further in deciding this case and may deny it on this ground. Thank you very much. Thank you, counsel. Mr. Nichol, you may have a minute for rebuttal if you'd like it. As far as the issue on a remand on credibility, again, this case is a little different in that the only evidence is the applicant's testimony. Often in persecution or terrorist cases, there's a great deal of evidence the government has, and the alien is trying to say, like, well, to refute that. In this case, it's only his testimony. So his testimony regarding what he did as far as putting up the pamphlets and, I mean, that is credible. No one's saying that he didn't do those things. So if you're going to remand it to say whether does this amount to material support, then that is an issue that could be reviewed, even if other aspects of his testimony were not deemed to be credible, because that's — and not all credibility issues are fatal to a claim. This is not under the Real ID Act. His application precedes that. It was something that would have to go to the very heart of his claim. And there — certainly the activities he was engaged in, no one's doubting what he did. So I think it could be remanded on that issue. Thank you, counsel. The case just argued is submitted. We appreciate both counsel's arguments. And we are adjourned for this morning's session. All rise.
judges: Graber, N.R. Smith, Rosenthal